IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Alfred William LaSure, #264677, ) | CIVIL ACTION NO. 9:15-1357-RBH-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| S. C. Mental Health; Cynthia Helff, ) | |
| Program Director and John McGill, ) | |
| State Director in their individual ) | |
| and official capacities, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an civilly committed inmate under the South Carolina Sexually Violent Predator's Act (SVPA), S.C. Code Ann. § 44-48-60, et. seq., alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. on September 8, 2015. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on September 9, 2015, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion on September 17, 2015,



to which the Defendants filed a reply memorandum on September 28, 2015.

Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified Amended Complaint[2] that he is a civilly committed person under the SVPA and that the Defendant Helff, Program Director, has "declared" that he has no right to the SCDC[3] canteen. Plaintiff alleges that this is not only a violation of his privileges as shown by the applicable rules and regulations, but that this is a violation of his federally protected liberty interest; specifically, that Helff's action violates his "freedom to use the canteen without fear of being placed on [monitored] canteen spending status".

Plaintiff alleges that under "monitored" canteen status, he has to first get permission from his case manager to access the canteen, and is then only allowed to spend a certain amount of money. Plaintiff further alleges that this is a result of Helff's rule that "Red Level" inmates cannot cook or share food. Plaintiff alleges that up until December 8, 2014, he had cataracts that made seeing things "quite difficult", and that because of this condition, on November 20, 2014 he asked a group member to assist him in fixing food and cooking. Plaintiff alleges that Helff then ordered three public safety officers to remove all canteen food items from his cell, following which Helff

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the factual allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]South Carolina Department of Corrections.



placed him on monitored canteen status until November 26, 2015. Plaintiff further alleges that he is also no longer allowed to interact with "the individual" (apparently the group member who assisted him in cooking his food).

Plaintiff alleges as a "Second Cause of Action" that during some period of time (it is not exactly clear when) he spent forty-five (45) days on therapeutic room restriction (TRR), which required him to be in his cell for twenty-three (23) hours a day, while only be allowed to be out of his cell for thirty minutes in the a.m. and thirty minutes in the p.m. Plaintiff alleges that the Behavior Management Committee, which includes Helff as a member, played some role in these events, although it is unclear whether Plaintiff is alleging that this Committee made the decision at issue, or whether he submitted complaints to this Committee. In any event, Plaintiff alleges that being placed on TRR violated his constitutional right to reasonable, non-restrictive conditions of confinement. Plaintiff seeks monetary damages as well as certain injunctive and/or declaratory relief. See generally, Plaintiff's Verified Complaint.

Plaintiff has attached thirty-three (33) pages of exhibits to his Complaint, including what purports to be an SVPA Unit Privilege System Memorandum from March 5, 2008, a copy of a letter to the Plaintiff from Holly Scaturo dated March 11, 2015 advising Plaintiff of his right to appeal a disciplinary ruling, a copy of a grievance form dated March 6, 2015, a copy of a Notice of Referral to the Behavior Management Committee dated February 18, 2015 relating to violations by the Plaintiff of monitored canteen status, a memorandum to the Plaintiff from the Behavior Management Committee concerning the results of a rule violation meeting, a copy of a letter to the Plaintiff from Versie Bellamy dated February 11, 2015 upholding a decision of the Grievance Committee, a copy of a Grievance Appeal form dated January 16, 2015, a copy of another letter to



the Plaintiff from Bellamy dated May 5, 2015 again upholding a decision of the Grievance Committee, a copy of a Grievance Appeal form dated March 17, 2014, a copy of a letter to the Plaintiff from Bellamy dated May 23, 2014 upholding a decision of the Grievance Committee, a copy of a Grievance Appeal form dated April 23, 2014, a copy of a letter to the Plaintiff from Bellamy dated July 22, 2014 upholding a decision of the Grievance Committee, a copy of a Grievance Appeal form dated July 14, 2014, a copy of a Memorandum from the Behavior Management Committee dated December 10, 2014, advising Plaintiff of the outcome of a Committee meeting, a copy of a letter to Plaintiff from Scaturo dated January 15, 2014 upholding a decision of the BMC, a copy of a grievance form dated December 19, 2014, a copy of a letter to Plaintiff from Bellamy dated December 23, 2013 upholding a decision of the Grievance Committee, a copy of a Grievance Appeal form dated September 18, 2013, a copy of a notice of referral to the Behavior Committee dated September 19, 2013, a copy of a Behavior Management Committee Memorandum advising Plaintiff of the outcome of a Committee meeting on September 20, 2013, a copy of Behavior Management Committee Memorandum dated October 7, 2013, a copy of a Behavior Management Committee Memorandum dated August 23, 2013, a copy of a Behavior Management Committee Memorandum dated June 15, 2012, a copy of a letter to Plaintiff from Scaturo dated November 27, 2012 upholding a decision of the Management Committee, a copy of a Grievance form dated November 20, 2012, a copy of a Behavior Management Committee Memorandum dated November 19, 2012, a copy of a Behavior Management Committee Memorandum dated August 8, 2011, a copy of a Memorandum to the Plaintiff from the "Treatment Team" dated March 2, 2009, a copy of another Memorandum to the Plaintiff from the "Treatment Team" dated November 18, 2009, and a copy of another Memorandum to the Plaintiff from the "Treatment Team" dated October



30, 2009.  See generally, Plaintiff's Exhibits.

In support of summary judgment in this case, the Defendant Helff has submitted an affidavit wherein she attests that she is employed by the South Carolina Department of Mental Health, where she holds the position of Program Manager I with the Sexually Violent Predator Treatment Program.  Helff attests that, in this position, she facilitates training and orientation sessions for staff on behavioral and treatment related issues and serves as Chair of the Behavior Management Committee (BMC).  Helff attests that the policies and procedures of the SVP treatment program have been developed to ensure institutional security and the safety of the residents and employees of the treatment program as well as of the treatment goals of the program.  As part of these policies and procedures, consideration is also given to the size limitations of the unit and the number of residents in the treatment program.  Helff attests that portions of the SVP treatment program policies and procedures that are applicable to the residents are duplicated and placed within a binder that is kept on the Edisto Unit, where it is easily accessible to the residents.  Helff further attests that certain policies, such as policies relating to personal belongings and contraband, are issued to the individual residents so that they each have their own copy.

Helff attests that the contraband policy is a non-exhaustive list of items that residents are not permitted to have, while the personal belongings policy is a non-exhaustive list of what items a resident can have, including how many of each item a resident can have.  Helff attests that both of these policies were created and implemented to address security and safety concerns on the Unit, including the fact that space is limited on the Unit.  Helff further attests that there are times when issues will arise that are not specifically addressed by the contraband or personal belongings policies, and that when this occurs the BMC and SVP treatment program management team make case by



case decisions based on their experience and professional judgment.

Helff attest that while she did not give any order for Plaintiff's room to be searched by public safety officers on or about November 20, 2014, his room was searched on that day as part of a random search, during which contraband was confiscated and other items were taken to be inventoried. Helff attests that searches of residents' rooms are necessary to ensure compliance with treatment program policy, for the safety and security of the Unit and the institution, as well as for the residents and employees of the treatment program. Helff attests that due to the fact that the residents of the treatment program have been deemed to be dangerous and sexually violent, they are subject to search, limited personal items, and other living restrictions, and because the residents housed within the Unit are there to receive treatment, some personal items are limited because they could interfere with the resident's treatment.

Helff attests that Plaintiff was placed on no contact with "Mr. Sanders", another resident, because Plaintiff sent Sanders money through a family member of Sanders and was also caught giving food and other canteen items to Sanders, both of which are violations of SVP treatment program policy. Plaintiff also lost the use of canteen privileges for four weeks and was placed on monitored canteen status until May 26, 2015 due to these violations.

With respect to freedom of movement, Helff attests that lock downs of the Units occasionally occur due to staffing shortages. Helff attests that lock downs of the Edisto Unit also occurred during the period March 2015 through July 2015 because the Unit was being renovated, which required the Unit to be locked down at times while construction was being performed to ensure the safety of the residents and of the workers. Helff also attests that because residents often require transportation outside the treatment program for court or medical appointments, there are



instances when not enough staff are present at the facility due to numerous residence transports, which can also require a lock down. Helff further attests that when inmates are transported outside the treatment facility, they are placed in restraints out of concern for safety of the employees and the general public, and not as a form of punishment.

Helff attests that at all times any decisions she made involving the Plaintiff were made through the exercise of her professional judgment and discretion in weighing competing considerations and in light of professional standards, and that she followed Department of Mental Health and treatment program policies and procedures as well as all state and federal laws and regulations at all times. See generally, Helff Affidavit.

Helff has attached several exhibits to her affidavit, as follows: Memorandum of BMC meeting for Plaintiff dated 12/5/14, referral of Plaintiff to the BMC dated 11/26/14, Behavioral observation Note regarding the Plaintiff dated 11/26/14, Request to Staff from Plaintiff dated 11/20/14, Behavioral Observation note regarding Plaintiff dated 11/19/14, referral of Plaintiff to the BMC dated 11/19/14, monitored canteen status memo regarding the Plaintiff, BMC hearing summary regarding Plaintiff and Marcus Sanders reference hearing dates 11/24/14, 11/26/14 and 12/5/14, outcome of BMC meeting for Marcus Sanders dated 11/24/14, and Request to Staff from Sanders dated 12/7/14. See Exhibits (attachments to Helff Affidavit) [Court Docket No. 55-6].

The Defendants have also submitted an affidavit from Holly Scaturo, who attests that she is an employee of the South Carolina Department of Mental Health and is a Program Director with the Sexually Violent Predator Treatment Program. Scaturo attests that her duties include supervising the day to day operations of the treatment program, including interacting with all residents and staff. Scaturo attests that the policies and procedures of the treatment program are



developed by the SVP Treatment Program Management Team (which includes herself and Helff) using their professional judgment, with consideration being given to institutional security and safety of the residents and employees as well as the treatment goals of the treatment program in conjunction with the size limitations of the Unit and the number of residents in the treatment program. Scaturo attests that she is not aware of any employees, including but not limited to the Defendants Helff and McGill, causing or attempting to cause any injuries to the Plaintiff's emotional or physical health, nor is she aware of any violations of Plaintiff's rights by any employee or official with the Department of Mental Health or the treatment program. See generally, Scaturo Affidavit.

Scaturo has also attached exhibits to her affidavit, as follows; SCDMH Sexually Violent Predator Treatment Program (SVPTP) Policy - Behavioral Management; SCDMH Sexually Violent Predator Treatment Program (SVPTP) Policy - Personal Belongings; and SCDMH Sexually Violent Predator Treatment Program (SVPTP) Policy - Contraband. See Exhibits (attachments to Scaturo Affidavit) [Court Docket Nos. 55-3, 55-4, and 55-5].

As attachments to his response in opposition to the Defendants' motion, Plaintiff has attached as exhibits a copy of a "presentment" dated June 10, 2012 wherein Plaintiff seeks payment of $424.97 for one hundred twenty (120) magazines that had not been returned to him, a copy of a monitored canteen status form on which Plaintiff has handwritten some notes or statements, and a copy of a request to staff form dated September 1, 2015 in which Plaintiff complains about his canteen time. See Plaintiff's Exhibits [Court Docket No. 60-1].

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no



genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).  Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).  Here, after careful review and consideration of the arguments and evidentiary exhibits submitted, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

### (Defendant Department of Mental Health)

Plaintiff has included the South Carolina Department of Mental Health as a listed Defendant in the caption of his Complaint.  However, as a state agency, the Department of Mental Health is immune from suit in this Court pursuant to the Eleventh Amendment to the United States Constitution.  Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 99 (1984); Will v Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989); Brooks-McCollum v. Delaware, 213 Fed.Appx. 92, 94 (rd Cir. 2007); Metz v. Supreme Court of Ohio, 45 Fed.Appx. 228, 236, 237 (6th



Cir. 2002); see also Coffin v. South Carolina Dep't of Social Services, 562 F.Supp. 579, 583-585 (D.S.C. 1983); Belcher v. South Carolina Board of Corrections, 460 F.Supp. 805, 808-809 (D.S.C. 1978).

Therefore, to the extent Plaintiff has intended to name the Department of Mental Health as a separate party Defendant, the Department of Mental Health is entitled to dismissal as a Defendant in this case. Will, 491 U.S. at 66, 71.

## II.

### (Defendant McGill)

Turning to an examination of the merits of Plaintiff's claims, it must initially be noted that Plaintiff has provided no evidence, or even any allegations, to show that the Defendant McGill (Director of the South Carolina Department of Mental Health) played any role in the incidents at issue. He is not alleged to have been part of the BMC, to have made any of the decisions of which Plaintiff complains, or to even have been present on the scene. Hence, absent some evidence that Helff, in taking the actions that she did, was carrying out some policy or custom approved by McGill, there is no basis for liability against McGill even assuming Helff engaged in unconstitutional conduct. Vinnedge v. Gibbs, 550 F.2d 926, 927-929 at n. 1-2 (4th Cir. 1977)[Holding that the doctrines of vicarious liability and respondeat superior are not applicable to § 1983 actions].

Plaintiff has not provided any evidence of any policy or custom for which McGill was responsible,[4] carried out by Helff and relating to the incidents at issue, and McGill cannot be held

---

[4]Notably, the DMH Policies and Procedures provided to the Court as exhibits were all signed by Holly Scaturo, Director of the SVP Treatment Program (and who is not named as a Defendant in this case), not McGill. See, Exhibits (Court Docket Nos. 55-3, p. 9; 55-4, p. 2; 55-5, p. 6).



liable in this case for any actions taken by Helff simply because Helff works for the Department of Mental Health. <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980)[In order to state a cause of action under § 1983, a Plaintiff must allege, in part, that the named defendant deprived him or her of a federal right]. Plaintiff also can not maintain a claim against McGill as a party Defendant by suing him in his official capacity, as an official capacity claim is the same as asserting a claim against the Department of Mental Health, a state agency. <u>Green v. Williams</u>, No. 13-1019, 2014 WL 6666638 at * 1 (D.S.C. Nov. 24, 2014) [Employees of the South Carolina Department of Corrections are entitled to Eleventh Amendment immunity in their official capacities from damages].

Therefore, McGill is entitled to dismissal as a party Defendant in this case even if Plaintiff's claim against Helff is allowed to proceed.

## III

## (Defendant Helff)

Plaintiff is being held by the State Department of Mental Health pursuant to the provisions of the SVPA. The SVPA and its procedures have been upheld as a constitutionally valid exercise of the State's power to protect citizens from sexually violent predators. <u>In re: Luckabaugh</u>, 568 S.E.2d 338 (S.C. 2002). Under the SVPA, an individual convicted of a sexually violent offense may continue to be held following release from a prison sentence if they are classified as a sexually violent predator; <u>see</u> S.C. Code Ann. § § 44-48-60, 44-48-70; and the SCDC and the Department of Mental Health have entered into an inter-agency agreement whereby the sexually violent predator treatment program residents are housed in a segregated location within the Broad River Correctional Institution (BCI).

Plaintiff has been committed to the Department of Mental Health under the SVPA



since June 26, 2006. As an involuntarily committed patient, Plaintiff retains a liberty interest in receiving reasonable care in a reasonably non-restrictive condition or confinement. Youngberg v. Romeo, 457 U.S. 307, 324 (1982); see Seling v. Young, 531 U.S. 250, 265 (2001) ["[D]ue process requires that the conditions and duration of confinement under the [Sexually Violent Predator] Act bear some reasonable relation to the purpose for which persons are committed"]. Plaintiff is alleging that his constitutionally protected liberty interest is being violated in this case. However, although Helff, as a state employee, is subject to suit for damages in her individual capacity under § 1983, liability may be imposed only when evidence is submitted to show that "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment". Youngberg, 457 U.S. at 323. Further, "[i]n determining whether the State has met its obligations . . . decisions made by the appropriate professional are entitled to a presumption of correctness. Such a presumption is necessary to enable institutions of this type . . . to continue to function". Id, at 324.

Considered under this standard, Plaintiff has failed to set forth evidence sufficient to establish a genuine issue of fact that his liberty interest has been violated with respect to his canteen claim. First, Plaintiff does not even have a constitutionally protected right of personal access to the canteen. See Cabbagestalk v. Richstead, No. 09-1834, 2009 WL 4040479, at * 8 (D.S.C. Nov. 19, 2009) [No constitutional right of access to a prison canteen]; Bennett v. Cannon, No. 05-2634, 2006 WL 2345983, at * 2 (D.S.C. Aug. 10, 2006) [No free standing constitutional right to canteen privileges]; see also Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) [No constitutional right of access to a prison gift or snack shop]. Further, Plaintiff has not only failed to show that the

- 12 -



Defendant Helff or anyone else involved in his care and treatment failed to follow policy and procedure in restricting his canteen privileges, but both Defendants' exhibits as well as Plaintiff's own exhibits show that the policy or policies at issue was followed. See Defendants' Exhibits [Court Docket No. 55-6]; Plaintiff's Exhibits [Court Docket No. 8-1, pp. 1, 7, 9, 15, 17-18].

Plaintiff has failed to show that his loss of canteen privileges and or placement on monitored canteen status was not reasonably related to the objective of ensuring compliance with canteen and other treatment policies, which are presumptively valid. Youngberg, 457 U.S. at 320, 323 ["[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made] (internal citations omitted); Seling, 531 U.S. at 265 [Due process satisfied where conditions imposed bear a reasonable relation to the purpose for which persons are committed]. Nor is there any evidence that Plaintiff being prohibited from contacting another resident with whom he had been found to have engaged in misconduct violated a protected liberty interest. Parham v. J.R., 442 U.S. 584, 599-600 (1979) [Liberty interest of the individual must be weighed against the legitimate interest of the State to maintain order]. Additionally, the documentary evidence provided to this Court shows that Plaintiff was afforded a hearing with respect to his alleged violations before punishment was imposed. See Exhibits [Court Docket No. 55-6]; Youngberg, 457 U.S. at 323-324 [Decisions made by the appropriate professional are entitled to a presumption of correctness, and liability may be imposed only when evidence is submitted to show a substantial departure from accepted professional judgment, practice or standards].

As for Plaintiff being placed on therapeutic room restriction, Plaintiff's own supporting documents show that Plaintiff was placed on TRR status for forty-five (45) days for

- 13 -



harassing other residents. See Court Docket No. 8-1, p. 31. Again, no constitutional violation is shown in these exhibits. Parham, 442 U.S. at 599-600. In any event, Defendants also correctly note that Plaintiff's TRR status ended on April 16, 2009, and that the statute of limitations for bringing any claim relating to this TRR status therefore ended on April 16, 2012. See Kelly v. White, No. 10-982, 2011 WL 939015, at * 1 (D.S.C. Mar. 16, 2011) [Noting that statute of limitations for a claim brought under § 1983 is three (3) years pursuant to the applicable South Carolina law governing three year statute of limitations for personal injury claims]. This lawsuit was not filed until March 25, 2015. Therefore, this claim is barred by the applicable statute of limitations.

Finally, it is noted that, in his response brief, Plaintiff spends considerable time complaining about a confiscation of personal property (apparently some magazines). That is not a claim set forth in Plaintiff's Amended Complaint. Therefore, even if Plaintiff is now attempting to assert this issue as a separate claim in this lawsuit, it should be dismissed. Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) [Party may not expand its claims to assert new theories in response to summary judgment]; White v. Roche Biomedical Labs, Inc., 807 F.Supp. 1212, 1216 (D.S.C. 1992) [Parties generally not permitted to raise a new claim in response to a motion for summary judgment].

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted,** and that this case be **dismissed**.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February 29, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

